FILED

2013 AUG 13 AM 9: 22

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY J. DAVIAN and DAVIAN CAPITAL ADVISORS, LLC,<br><br>Defendants. | CASE NO.: 13 CV 1762<br><br>JURY DEMANDED<br><br>JUDGE DOWD<br><br>MAG. JUDGE BURKE |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission alleges as follows:

1. This case concerns an ongoing fraudulent scheme being perpetrated by defendant Anthony J. Davian. To date, Davian has misappropriated more than $1 million from investors in funds managed by his company, defendant Davian Capital Advisors, LLC ("Davian Capital"). Defendants promote Davian Capital as a highly successful investment firm managing a portfolio of profitable hedge funds. But Davian Capital is nothing more than Davian's personal piggy bank. He has invested only some of his clients' funds. He has used the rest to finance construction of a luxury home for himself, and to buy himself a luxury car, among other things. The SEC brings this lawsuit to immediately stop defendants' ongoing violations of the federal securities laws, to prevent further harm to investors, and to seek disgorgement and civil penalties stemming from defendants' wrongdoing, among other remedies.

## JURISDICTION AND VENUE

2. The SEC brings this action pursuant to Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77t(b)], Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78u(d) and 78u(e)], and Section 209(d) of the Investment Advisers Act of 1940 [15 U.S.C. § 80b-9(d)].

3. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], Section 214 of the Advisers Act [15 U.S.C. § 80b-14], and 28 U.S.C. § 1331.

4. Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Acts, practices and courses of business constituting violations alleged herein have occurred within the jurisdiction of the United States District Court for the Northern District of Ohio and elsewhere.

5. Davian and Davian Capital both reside and transact business within the Northern District of Ohio.

6. Defendants directly and indirectly made use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices, and courses of business alleged herein, and will continue to do so unless enjoined.

## DEFENDANTS

7. Defendant Anthony J. Davian, age 34, is a resident of Copley, Ohio. Davian is the managing member of defendant Davian Capital. Davian maintains complete control over Davian Capital. Since at least June 2011, Davian, through Davian Capital, has been engaged in the unregistered offer and sale of securities in the form of limited partnership interests in his various private funds.

8. Defendant Davian Capital Advisors, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Richfield, Ohio. Since at least June 2011, Davian Capital Advisors, LLC has been an unregistered investment adviser to several private investment funds formed by Davian, including Davian Capital L.P., Davian Capital L.P. II, Rubber City Gravity L.P., Rubber City Pure Alpha, L.P., Cleveland Gravity Fund L.P., Cleveland Pure Alpha Fund, LP, Cleveland Pure Alpha II L.P., and Cleveland Precious Metals Fund, LP.

## OTHER PARTIES

9. Davian Capital L.P. ("LP I") is a Delaware limited partnership formed by Davian in 2008. LP I is purportedly a private long/short equity investment fund, which Davian told investors was comprised mainly of friends and family as investors.

10. Davian Capital L.P. II ("LP II") is a Delaware limited partnership formed by Davian in March 2011. LP II is purportedly a private long/short equity investment fund that Davian made available to new investors after LP I closed. Davian told investors that LP II would be effectively the same fund as LP I.

11. Rubber City Pure Alpha, L.P. ("RC Pure Alpha") is a Delaware limited partnership formed by Davian in July 2012. RC Pure Alpha is purportedly a private long/short equity investment fund.

12. Rubber City Gravity L.P. ("RC Gravity") is a Delaware limited partnership formed by Davian in October 2012. RC Gravity is purportedly a private short equity investment fund.

13. Cleveland Gravity Fund L.P. ("Cleveland Gravity") is a Delaware limited partnership formed by Davian in May 2013. Cleveland Gravity is purportedly a private short equity investment fund.

14. Cleveland Pure Alpha Fund, LP ("Cleveland Pure Alpha") is a Delaware limited partnership formed by Davian in May 2013. Cleveland Pure Alpha is purportedly a private long/short equity investment fund.

15. Cleveland Pure Alpha Fund II L.P. ("Cleveland Pure Alpha II") is a Delaware limited partnership formed by Davian in May 2013.

16. Cleveland Precious Metals Fund, LP ("Cleveland Precious Metals") is a Delaware limited partnership formed by Davian in May 2013. Cleveland Precious Metals is purportedly a private precious metals fund that would hold and store precious metals.

17. Davian has also owned and/or managed a slew of other entities over the years, including Davian Holdings LLC, Davian LLC, Davian & Co., LLC, The Davian Letter LLC ("The Davian Letter"), The Alumni Fund, L.P. ("Alumni Fund"), Pippin Pet LLC, and Stock.Ly Inc.

## FACTS

18. In July 2008, Davian formed Davian Capital, an unregistered investment adviser, and created LP I as a hedge fund. Davian claimed to have $5 million under management in LP I. Thereafter, Davian created seven limited partnerships as private investment funds managed by Davian Capital, including LP II, RC Pure Alpha, RC Gravity, Cleveland Gravity, Cleveland Pure Alpha, Cleveland Pure Alpha II, and Cleveland Precious Metals (collectively "the Funds").

4

19. Throughout its existence, Davian has enjoyed complete control over Davian Capital. On information and belief, he has been the sole investment manager for the Funds. He has retained sole access to the bank accounts for Davian Capital and the Funds. He has prohibited others from accessing or monitoring such accounts – including Davian Capital's own accounting employee, as well as the third-party administrator that generates client statements. Davian has regularly disregarded corporate formalities, routinely commingling funds between Davian Capital and the Funds.

20. Davian has provided potential investors with marketing materials touting the Funds' supposedly high returns and describing his purportedly profitable trading strategies. Such returns and profits were figments of Davian's imagination. In any event, unsuspecting potential investors apparently liked what they read. Since June 2011, Davian has raised at least $1.5 million from investors.

21. Davian has misappropriated most of that money. As an example, on June 29, 2011, an investor wired $100,400 into a LP II bank account that previously had a balance of less than 13 dollars. Davian immediately transferred $65,000 of that money to a previously empty bank account belonging to Davian Capital. With it, he bought himself an Audi Q7 Prestige automobile.

22. In June 2013, Davian Capital's landlord invested $25,000 in Cleveland Precious Metals. Davian immediately diverted that money to pay his personal attorney and to honor investors' redemption request.

23. More recently, in mid-June 2013, Davian pressured three brothers to bundle together several hundred thousand dollars to invest with his funds. He told them that if they acted fast he would give them a break on his firm's management fees. Not wanting to miss

out on such an opportunity, the three brothers each contributed $75,000. On July 5, 2013, they wired $225,000 to Cleveland Gravity's bank account. The three brothers never authorized Davian to use those funds for anything other than investing in Cleveland Gravity. But unbeknownst to them, Davian immediately used their money to fund the construction of his luxury house.

24. All told, since June 2011 Davian has misappropriated more than $1 million of investor proceeds.

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act
### (Against Both Defendants)

25. Paragraphs 1 through 24 are realleged and incorporated by reference as though fully set forth herein.

26. Davian, through Davian Capital, falsely claimed the Funds were generating high returns thanks to his profitable trading strategies. The marketing materials included other lies, including descriptions of Davian Capital's supposedly robust internal controls. In fact, Davian Capital effectively had no internal controls – as evidenced by Davian's use of Davian Capital as his own piggy bank and his rampant commingling of investors' proceeds.

27. Davian's misrepresentations were made in the offer and sale of securities. He lied to investors before they invested in the Funds, both orally and in writing. Among other things, he drafted the aforementioned marketing materials – seeded with lies about the Fund's performance and Davian Capital's internal controls. He gave such materials to investors before they decided to invest in the Funds.

28. Davian's misrepresentations were material. Investors were led to believe the Funds' enjoyed proven track records. Investors were told that Davian Capital had

safeguards to protect their investment proceeds. Such lies provided investors with false and unwarranted comfort.

29. By engaging in the conduct described above, defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

30. Defendants intentionally or recklessly made the untrue statements and omissions and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above. Davian knew he was stealing money from his clients and that the Funds were not generating the returns he claimed in marketing materials and fabricated account statements. Davian knew there were no safeguards in place to prevent unauthorized withdrawals; he repeatedly used his complete control over the Funds' bank and brokerage accounts to abscond with investors' money. Davian's scienter can be imputed to Davian Capital because, on information and belief, he is the managing member and sole owner of the firm.

31. By reason of the foregoing, defendants violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Sections 17(a)(2) and (3) of the Securities Act
### (Against Both Defendants)

32. Paragraphs 1 through 31 are realleged and incorporated by reference as though fully set forth herein.

33. By engaging in the conduct described above, defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have:

   a. obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and
   b. engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

34. Defendants made the untrue statements and omissions of material fact and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above.

35. By reason of the foregoing, defendants have violated Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2)-(3)].

## COUNT III

### Violations of Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5
### (Against Both Defendants)

36. Paragraphs 1 through 31 are realleged and incorporated by reference.

37. As more fully described in paragraphs 1 through 31, defendants, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as

a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

38. On information and belief, Davian is the sole owner and representative of Davian Capital, the manager of the Funds. Davian is responsible for the activities of Davian Capital. Davian created or caused to be created false and misleading marketing materials. Davian stole his investors' money, created fabricated account statements to conceal his fraud, and gave his investors false assurances about the security of their funds and the legitimacy of Davian Capital's operations.

39. Defendants knew, or were reckless in not knowing, of the facts and circumstances described in paragraphs 1 through 31.

40. By reason of the foregoing, defendants violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## COUNT IV

### Violations of Advisers Act Sections 206(1) and 206(2)
### (Against Both Defendants)

41. Paragraphs 1 through 31 are realleged and incorporated by reference.

42. Davian Capital collected management fees from the Funds based on the investment management services it provided to the Fund. Davian, through Davian Capital, defrauded the Funds – Davian Capital's clients – when he misappropriated the Funds' assets.

43. As more fully described in paragraphs 1 through 31 above and as alleged in this claim, at all times alleged in this complaint, defendants, while acting as an investment adviser, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, knowingly, willfully or recklessly: (i) employed devices, schemes or

artifices to defraud its clients or prospective clients; and (ii) engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon its clients or prospective clients.

44. By reason of the foregoing, defendants have violated Sections 206(1) and 206(2) of the Advisers Act. [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## COUNT V

### Violations of Section 206(4) of the Advisers Act
### and Rule 206(4)-8 Thereunder
### (Against Both Defendants)

45. Paragraphs 1 through 31 above are realleged and incorporated herein by reference.

46. Davian and Davian Capital defrauded investors in the Funds by making false and misleading statements relating to the Funds' performance, the existence of "dual authorization" safeguards against the unauthorized taking of client funds, and the extent to which third parties were reviewing and verifying the Funds' accounts. Defendants made false and misleading statements to investors by providing them with falsified accounts statements that failed to disclose Davian's repeated misappropriations of client funds.

47. By their conduct, defendants, while acting as investment advisers, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative.

48. By their conduct, defendants, while acting as investment advisers to a pooled investment vehicle: (a) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, to investors or prospective investors in the pooled

investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

49. By reason of the foregoing, defendants violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8]

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that defendants committed the violations charged and alleged herein.

### II.

Enter an Order of Permanent Injunction restraining and enjoining defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with defendants who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 CFR § 240.10b-5] thereunder, and Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

### III.

Issue an Order requiring defendants to disgorge the ill-gotten gains received as a result of the violations alleged in this Complaint, including prejudgment interest.

IV.

With regard to the defendants' violative acts, practices and courses of business set forth herein, issue an Order imposing upon defendants appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

V.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Grant such other relief as this Court deems appropriate.

## JURY DEMAND

The Commission hereby requests a trial by jury.

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

By: /s/ Jonathan S. Polish
Jonathan S. Polish (IL Bar No. 6237890)
Jeffrey A. Shank (IL Bar No. 6283981)
Christopher H. White (IL Bar No. 6280031)

Attorneys for Plaintiff
U.S. SECURITIES AND
 EXCHANGE COMMISSION
175 West Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390

Dated: August 13, 2013